If I might ask, Shirley, do we have the docket? Where are the dockets, Shirley? That's the first mistake I've ever known you to make. Thank you, Shirley. All right, we call the first case, U.S. v. Fernandez, and we'll hear first from Mr. Boydman. Good morning, Your Honors. May it please the Court. My name is Kevin Boydman, and along with me is Diane Copes, and we represent the government in this matter. Your Honors, we respectfully request that this Honorable Court reverse the District Court's ruling that granted a new trial based on the finding made 20 years after the fact that Rolando Fernandez's trial counsel was ineffective for not obtaining an exculpatory affidavit from his co-defendant, Luis Sensat. Your Honor, Mr. Fernandez and Luis Sensat were both high-level members of a large cocaine trafficking organization that operated in the late 80s and early 90s that was based out of Miami and funneled thousands of kilograms of cocaine to various areas, including the New Orleans area. In 1995, they went to trial in a multi-day trial that involved testimony of multiple co-conspirators, law enforcement agents, and one agent from the British Customs Service. He was convicted by a jury, and at sentencing, the District Court found that he was a leader and involved in an extraordinary quantity of the trafficking of cocaine, and the District Court imposed a life sentence, called for the guidelines, and determined that that was appropriate. That was not a mandatory sentence, was it? It was mandatory only in the sense, Judge Southwick, that the guidelines at the time were mandatory. It was pre-Booker. And so the calculations of the base offense level and plus the judge's findings of leadership for Mr. Fernandez called for the life sentence as imposed by the guidelines. But it was not an upward departure, and of course, the Court could have downward departed if it had reasons to, but did not. However, after that sentencing was imposed, this Court in 1996 affirmed the conviction, as well as the sentence, and rejected a claim of insufficient evidence or any error. Afterwards, in 1997, Mr. Fernandez, through his attorney, through another attorney, filed a 2255 motion and made several claims of ineffective assistance of counsel, including the one pertinent here today, which is that his trial counsel was ineffective for not obtaining an exculpatory affidavit from the co-defendant Sensat. Did they have a copy of that, of an affidavit from him? An affidavit was submitted with, from Luis Sensat in 1997. It was submitted about a month, I believe, after the motion, but it was supplemented. And in that affidavit, the only thing Luis Sensat said, and this is at page 611 of the record, was prior to trial, I personally advised Richard Diaz, who was Mr. Fernandez's attorney, to move for severance in behalf of Rolando Fernandez, further affiance if not. So that's the only affidavit and only evidence that went into effect. In 1998, based on that, the District Court denied 2255 relief and found that given the bulk of the evidence presented against Fernandez, there is no reasonable probability that the trial result would have been otherwise. And that's page 645. Was that Judge Fallon also? Yes, it was, Your Honor. He presided over the case and the trial and sentencing as well. In 2012, 13 years after this Court denied COA, Mr. Fernandez, through new counsel, filed a Rule 60B motion claiming that the specific claim today was left unresolved. And for the first time, submitted a second affidavit from Luis Sensat. This affidavit, Mr. Sensat said for the first time ever that Rolando Fernandez was never involved in any drug trafficking activities with me. I would have testified to this but was unable to do so at our joint trial without relinquishing my Fifth Amendment rights. But nothing in this declaration is an admission of unlawful activities on my own part. When Sensat signed that first affidavit for the first time, had he already been convicted and was that final? Yes, Your Honor. Both Mr. Sensat and Mr. Fernandez were tried together. They were convicted together and this Court affirmed their offense. Sensat had no 2255s pending? He filed a 2255. I think it's part of the record in this one. It was supplemented. But that 2255 was also denied. Before he filed the first affidavit? The 2255s were actually filed simultaneously, I believe. I can't say exactly it was the exact same day but it was the same attorney that handled both and the 2255 was denied on that as well. Certainly by 2012 when he filed these affidavits, the 2255 process had completed. I'm not sure whether his conviction was final or at least the 2255s had been resolved when he filed the first affidavit. I don't believe the 2255 was resolved. This Court had affirmed the conviction already. I got you.  It was a trial, correct? Sensat and Fernandez? Yes. But you're saying the first 2255, the same lawyer represented both of them? It was a different lawyer. It was not the trial counsel. It was a lawyer named Mr. Bessemer filed 2255s on each of their behalf. Separate 2255s. Third attorney but one person representing both individuals? Yes. It was Mr. Bessemer at the 2255 in 1997. What we have here, Your Honor, is when we get to this point, Judge Fallon granted, ultimately granted the Rule 16 2255 relief and granted the new trial. He did so based on his belief that the failure to pursue the affidavit by trial counsel constituted ineffective assistance of counsel. So I want to start and focus on that issue because that's the ultimate issue here that vacated the trial and caused, is now causing the government to possibly put together a trial 20 years after the fact. It was error to find that the trial counsel had committed ineffective assistance of counsel under the highly deferential standard of Strickland. Reasonably effective assistance is what's required, of course, and judicial scrutiny must be highly deferential so that we avoid the second guessing in hindsight that Strickland is designed to remove. In doing so, Judge Fallon found that there was prejudice because the affidavit wasn't obtained by trial counsel. However, this Court's precedents, including Broussard, Butler, and Winn, have said exactly what needs to be shown when the severance is based on the need for a co-defendant's exculpatory testimony. The move-in has to show the need for a bona fide need for the testimony, the substance of the testimony, its exculpatory nature, and actually show that the co-defendant would indeed testify. Well, the substance and the exculpatory nature of these affidavits are very null. The only statement is that which I previously read in the affidavit in which Mr. Sensat said he would testify that Rolando Fernandez was not involved in any drug trafficking activities with him. If you look at the courts, we cited the case of Jobe, J-O-B-E, and also the case of Broussard in our brief. That information is just not specific enough to be considered exculpatory to require a severance. It needs to have more information. What you have here is just a blanket statement by Sensat, who by his own admission today is still maintaining his innocence, and has still said within the affidavits and at an evidentiary hearing held in 2013 that he was not going to say anything that was going to be used against him. In fact, he had counsel at the 2013 hearing which objected, invoked his Fifth Amendment rights, and made clear that Mr. Sensat is trying to retain whatever rights he had. And that actually goes to the problem with the fourth prong of having to show that there was an unconditional guarantee that Mr. Sensat would indeed testify. This Court has said a conditional officer is offered to testify is not enough in Broussard. Well, Sensat never gave that. Maintaining his innocence today, he still has a desire to avoid self-incrimination, and that conditional desire is not sufficient. Even the district court in its order realized the conditional nature of it because he said if the trial is severed, and if Sensat was tried first, and if he could testify free of Fifth Amendments, then the district court thought it would make a difference. But with all those ifs in place, Your Honor, it shows that the offer is actually conditional. And looking at Broussard in that case, that's not what you can, that's not what's required to show to mandate a severance. The only count that Fernandez was convicted on was a conspiracy count, right? The conspiracy count, yes, Your Honor. Which, uh? Conspiracy with Sensat. I'm sorry? Conspiracy with Sensat? Yes. And others, known and unknown. And several of the co-conspirators actually testified in the trial. Because it was a large-scale conspiracy, and that's another reason because of the weight of the evidence that was presented at trial is another reason that even if the case was granted, there was no prejudice under the Strickland prong to show. At the trial— I don't see in the prejudice argument anything about the evidence at the original trial. Was there direct evidence of Fernandez's involvement? Yes, Your Honor. There were several, multiple co-conspirators testified, as well as law enforcement testified. There was evidence that showed Fernandez helped broker deals to smuggle cocaine from Columbia at his place of business in his house. And some sites, we've cited some in our brief, pages 1561 to 63. Did Judge Fallin consider this other evidence when he got into the significance of the affidavit he was looking at? What Judge Fallin did is make a determination, which we believe is erroneous, that at a severed trial, much of the evidence would not have come in and been inadmissible because of the severed nature of the trial. Judge Fallin never said why that was or never said what evidence would come out. There was evidence, obviously, as you understand better than I do, just against co-defendants, certainly the case. But you're telling me this is evidence that directly identified Fernandez. Yes, Your Honor. And in addition to co-defendant testimony, there were testimony of law enforcement agents who made a traffic stop and seized about $200,000 from Fernandez's vehicle. There was also law enforcement agents posing as offshore money launderers, and Fernandez brought those agents about $120,000 with the understanding that it was going to be going back to a Columbia cartel. There was also a British customs agent who overheard Fernandez at a restaurant tell a friend of his, I just need this cocaine deal and then I'll be clear. And at the severed nature of a trial, Your Honor, even if the trial would be severed, under this Court's precedence for drug conspiracy, the government was still required to prove the amount of drugs involved in the conspiracy as a whole. So even in a severed trial, the evidence would have been admissible and would have come in, and we believe the district court was in error for that. And the problem with allowing this decision to stand, Your Honor, is it ultimately encourages on severance purposes, it would encourage people to move for severance on a much lower standard than this Court has required, and more importantly for the Strickland, it would reduce the high deference entitled attorneys and replace it with a second guessing, especially after so many years in this case. And the length of time is actually one of the problems we've got here, Your Honor. Aside from the ineffective assistance of counsel grant, the Rule 60b-6 that granted and reopened the matter was also erroneous because it was filed so late. It was filed 13 years after this Court denied a COA. Did you challenge at all the use of 60b-6, which is not supposed to be used if one of the others, 1 through 5, is available? It seems to me this could be a mistake on a 60b-1 or some other. Was that an issue at all in front of Judge Fallin? The concept of whether it should have been 1 through 5 or 6 specifically, I don't think that issue came up. Well, some have specific time deadlines. That's correct. That is why it would have been worth exploring potentially. Maybe there's nothing there. But anyway, that was not a question. That specifically was not a question, Your Honor. We did challenge the Rule 60b-6 as to whether it was actually a 60b-6 or a second in success of 2255. But once counsel did say Rule 60b-6, we did argue that it was not filed in a reasonable time. And as this Court has said, the time for filing is measured from the time you have grounds to make the motion. Well, here, if Judge Fallin had not ruled in the motion, that should have been apparent in 1998 when the order came out, and at the very least in 1999 when this Court denied COA. Instead, Mr. Fernandez waited until 2012 to file the motion. And even assuming that the letter for sympathy that Mr. Fernandez sent to Judge Fallin in 2008, maybe that was the time. But even in that letter, he doesn't raise that issue. He just asks why he was held prison. The only reason the judge came justifying the lack of reasonable, the filing of a reasonable time was his claim that Mr. Fernandez did not have an attorney to handle his post-conviction proceedings. Well, first of all, the record shows that's not true because in 1997, he did have an attorney file a 2255, and that attorney actually even filed a COA with this Court. So he did have an attorney during that situation. The further problem with finding it was a reasonable time was that Judge Fallin did not find that there were extraordinary circumstances, and I'd submit that Mr. Fernandez did not show extraordinary circumstances. That's important, Your Honor, because in Gonzalez v. Crosby, the Supreme Court said Rule 60b-6 requires a showing of extraordinary circumstances for relief. And again, I looked at the judge's order again, and I don't think I missed it, but I'm pretty sure that Judge Fallin didn't even address whether there were extraordinary circumstances, and that's fatal. He just believed that there was no prejudice in reopening it. We disagree with that because we certainly think the government is prejudiced by the reopening in this matter. You know, the District Court went so far as to say it didn't even have to consider the government's interest and that the government really isn't a party. Respectfully, we certainly believe we are a party to the case. We're the ones who prosecuted it. And this, we certainly do have prejudice in here. This is not the same as just retrying a case that maybe was reversed after direct appeal or after a very quickly filed 2255. We now have to reassemble a trial that's almost 20 years old, try to file multiple conspirators, see if they can still testify, if they're still cooperative and testify clearly from clear memories, multiple law enforcement agents, including one from Great Britain, and there's also the possibility of destruction of evidence. This potential for prejudice highlights exactly why Rule 60b-6 should not be allowed to be filed 13 years after, and it shows the potential for abuse of Rule 60b-6. Judge Fallin actually ruled on this claim in the first abuse, didn't he? We certainly believe he did in 1997. There's a disagreement with that, and we also realize that in this situation, the District Court stated that it knew better than any other court to do what it would do in any other review, Your Honors, and that's just review the record and make sense. However, even if you find that Judge Fallin did rule on it, the motion should have still been denied, and this Court should still be reversed because of the timeliness issue. I see my time is up. Unless the Court has any other questions, I'll reserve the balance for rebuttal. There's no time left for rebuttal, Mr. Baldwin. Thank you very much. Thank you, Your Honor. Okay, Ms. Shobart. Injured in the line of duty? No. No, fell from a horse once again. Your Honor, good morning. Robin Schulberg representing Rolando Fernandez. We ask the Court to affirm the District Court. I'd like to start with the grant of the Rule 60b-6 motion. There are three factors that I believe are dispositive here. One, there was an actual defect in the integrity of the 2255 proceedings in that one of the claims in effective assistance of counsel in litigating the motion to severance was not decided, and I'll go through that in more detail in a minute. The second key dispositive issue is that there was an extraordinary circumstance. The District Court found that it would not have sentenced Mr. Fernandez to a life sentence if the trials had been severed, and that has to weigh pretty heavily, I believe. The third thing that's dispositive is the Court's balancing of the equities, i.e., the fact that Mr. Fernandez might be subject to constitutional deprivation of counsel versus the government's interest in finality, the delay in filing. What had to prevail in that situation was the incessant commands of conscience that the judge felt it was not right that he had sentenced Mr. Fernandez to a life sentence and would not have done that if he had been tried separately and the motion to sever had not been properly litigated. Okay. Ms. Schoenberg, now, 60B, Rule 60B, had to be invoked in order to authorize the District Court to consider this. Is that right? Correct. Do you have any law where any delay, like ten to thirteen years, has been involved that the Court has said is a reasonable time under B6? No, because the statements are always reasonable time absent good cause. Let me make clear that what constitutes good cause is an equitable determination. And recently, and it's an absolute fact that Mr. Fernandez, he had a 2255 lawyer paid by Sensat who filed basically in tandem petitions and I think there was a real conflict of interest there in terms of getting Sensat to say more in his affidavit, what he was going to ask Sensat to do since he represented both Sensat and Fernandez. So he had a lawyer in this first review of his constitutional claim who I think was disabled by a conflict. After that, he had no lawyer and there was no way in the world that Mr. Fernandez was going to figure out Rule 60. And then he got me and another AFPD and we negotiated for several years. Now, if you look at some recent developments in Martinez v. Ryan and Trevino v. Taylor, they say that a procedural default is excused when you're on first initial review of ineffective assistance at counsel at trial if you didn't have effective assistance at counsel. And if you then look at McQuiggins v. Perkins, they take an actual innocence claim and they say, okay, that excuses procedural default, but it can also excuse untimeliness. And I think you can follow that same train of reasoning as to the delay in filing the Rule 60 motion. I look back at what was filed in district court and requested briefing here to see if there was an actual innocence claim. That has not been articulated, it seems to me. Is that correct? Mr. Fernandez has always insisted that he was innocent. Fair to say and that is certainly mentioned in the briefs. But insofar as going through the legal hurdles of trying to assert an actual innocence claim plus the necessary additional claims that have to be made, that's not been done in this case. That's correct. That's correct. So we would argue that the court could make an equitable determination. Yes, there's a delay. Yes, there's an interest in finality. But if this had severed the trials and Mr. Fernandez would not be in prison for life. And that determination is subject to abuse of discretion review. I mean, Judge Fallon didn't rely on that, did he? No, he just said he didn't have counsel. But he did have counsel. He had counsel in 1997, but it was the same lawyer who represented Sensot and at least according to what Mr. Fernandez stated at a hearing, paid by Sensot. So when you've got a situation of is Mr. Sensot going to exculpate, give an affidavit exculpating Mr. Fernandez when it might incriminate him, that lawyer is not in a position to negotiate. Would any lawyer be in a position to do that? Well, if Mr. Fernandez had his own lawyer, as Mr. Diaz should have done, don't stop just because, be aggressive in terms of trying to get Mr. Sensot to give that affidavit. When I went there with Mr. Sillitani from our office, it used to be my office, Sensot said he gave us this affidavit saying he would exculpate Mr. Fernandez had there been separate trials and he said at the hearing he testified no one had ever asked him to do that before. Now that other lawyer withdrew as soon in 1999 when COA was denied and between 1999 and 2009, Mr. Fernandez had no lawyer. He sought commutation of sentence. In 2004, he had people writing letters for him. There's no way that this person would have understood that he needed to file a Rule 60 motion. All I'm saying to the Court is that the Supreme Court seems to put more emphasis now on whether you had competent counsel to litigate effective assistance of counsel at trial. . . . Mr. Fernandez's attorney went to Sensot's attorney and asked him to get the affidavit. What more should he have done? . . . He went to Sensot's attorney who told him he would advise Sensot not to file such an affidavit. The lawyer should have said, well, can I ask Sensot in your presence or whatever. Then they had joint defense meetings because there were times when Mr. Fernandez's lawyer had to translate for Mr. Sensot because Sensot didn't speak English. There was certainly a situation to do that. The courts have recognized that there is a tension between Rule 4.2 and effective assistance of counsel and zealous representation. As a matter of professional courtesy, you don't go behind the other lawyer's back, but you still have a duty to, as far as you can, advocate your client's position. Perhaps Mr. Sensot . . . he said he would have given such an affidavit if there had been separate trials, but he was never asked. I think Mr. Diaz had an obligation to ask in the presence of Sensot's lawyer, and that was not done. Let me just . . . does the Court have any questions? I'd be happy to discuss this question of whether the IAC claim about severance was, in fact, decided because I believe the government's the court order. It seems to me what an order says is a legal question. It's one thing to go back to the original judge and say, what did you mean, but there are rules of interpretation, and if four claims, whether it's 2255 or whether it's a civil case, which I guess it actually is, but some other sort of civil case, what a judge says and what he doesn't say, we have implications and presumptions that apply to that, and you don't go back and ask the original judge, why didn't you say something? What authority is there to rely on Judge Fallon's reconstructed understanding of what he meant in an order? The general interpretation when you address an array of claims, if you end up not stating one, generally I presume you also dismissed if the rest of them have been dismissed, so how do you get either authority allowing us to use what Judge Fallon indicates he now remembers versus a case law that says you make certain presumptions about what these orders mean? Well, when I was preparing for this argument, I came across Johnson v. Williams, 133 S. 188, 2013, and that's where the Supreme Court looked at what do you do when a court denies a habeas petition, a petition for post-conviction relief, and addresses certain claims and not others, and they said there was a dispute between the majority and Justice Scalia, and the majority wanted to know what the state court actually did. Did it actually decide that claim, or what did it go through, or did it miss it by sheer inadvertence? Justice Scalia said, that's not the question, what it actually did. The question is we got an order denying relief, and that should count for everything, and the majority would not know whether the failure to address the other claims was done through inadvertence. Now, they had a rebuttable presumption that the judge meant to deny all the claims, even if he didn't address some, but it was rebuttable, and they made real clear that it could, that the defendant could bring forth other evidence to rebut it, and we'd say in that situation, the judge's recollection is what would rebut it. Let me also just point to, I think it's clear from the order, from the order itself. I think it's, this order, the first sentence is Fernandez claims he was deprived of effective assistance of counsel at trial. Well, a severance motion is not at trial, it's pre-trial. They list the claims in the next paragraph, the judge listed the claims, and the way it discussed the severance claim was, it says Fernandez also claimed that his attorney failed to obtain from co-defendant Luis Sensat an affidavit stating that Fernandez was not a part of the Sensat organization. Nothing relating that to severance, and in fact, if you go back and look at the government's brief, they did the same thing. That's at ROA 616 to 617, and they treated it as the claim was failure to obtain an affidavit to use at trial, and they said, well, that would have been hearsay. Well, that wasn't what the claim was at all. Well, it is the affidavit that the apprentice were talking about, though. Well, there was the talk of an affidavit, but in the claim, it was an affidavit to support a motion for severance, which Diaz did not get. What the judge decided, or for some reason, and I think it came from the way that the government listed the various claims, was getting an affidavit to present at trial, because very clearly, this order deals with Then in the next paragraph, the next paragraph starts with none of the movement's allegations satisfies the deferential standard of Strickland. This did not belong to the paragraph above where it mentioned this affidavit claim. It belonged to the next paragraph, which never mentioned the affidavit claim, and then when they just, when the court discusses prejudice, it says, given the bulk of evidence presented against Fernandez, there is no reasonable probability that the trial result would have been different. Now, if this had been a decision on was a severance claim properly litigated, there would have been some discussion about, well, would we have granted the motion to sever? And would there have been enough evidence at a separate trial? But there was none of that. It was just what went on, was counsel effective at trial, and that was the only thing that the prior order dealt with. So I think it's pretty clear from the face of the order, but as I said, if I believe Johnson v. Williams is authority for, we have to find what the judge intended to do, not just what the order says. Let me go on, unless there are more questions on the Rule 60 issue. Oh, let me just say, the government made a big deal out of including the affidavit as new evidence and some arguments, saying it wasn't a valid Rule 60 motion. What we did when we filed our Rule 60 motion is we combined it with an argument on the merits, assuming that the 2255 was reopened, that was the first part, Rule 60, then we included why the court should find ineffective assistance of counsel. Unlike the cases that the government cited, for example, about, the government cited about you can't include new evidence, here there was a failure to decide. I mean, if we didn't have the failure to decide, we'd be out of Rule 60. Now we got the ineffective assistance claim back on the burners. It hadn't been decided. Anything we say as to the claim that was originally filed or new evidence to support it comes in under Felix v. Maley, Maley v. Felix, which says if it pertains to the original claim, it relates back. Let me go on to the 2255 decision itself of ineffective assistance of counsel. On the other hand, he did have . . . what more could he do? You'll find, for example, in Gilliam and even in In re Chan, which the government cited, all that Rule 4.2 prohibits a lawyer from doing is talking to the client without first notifying the lawyer. What we're saying is that D.I. should have said, look, let me present this directly to your client and ask in your presence. That might . . . I mean, some lawyers might do that, but is it ineffective not to go around what the lawyer for the other guy says and go try to talk to him? The lawyer didn't say. There's nothing in there that said that Robino said you can't talk to my client. I mean, yeah, you don't stop at that point. I mean, I've had that situation. You don't stop. You try to talk to the client. Now, if the lawyer says, no, my client doesn't want to talk to you, that'd be different. Remember, we had the four of them meeting in Louisiana. These were Miami lawyers. Both clients are in jail in Louisiana. They come over together and they'd all meet together. That would have been a perfect situation to raise this issue. D.I. insisted that he wanted to do that. He owed that to Mr. Fernandez because that would have made a big difference to Mr. Fernandez's life, ultimately. It is certainly true, as the government argued, and we can't argue with the multitude of cases that say the affidavit should be more specific, that you can't reserve the right not to incriminate yourself. I think what we're looking at here is grander denial of a motion for severance again is abuse of discretion review. The district court very clearly here said, I believe Mr. Sensott, when he said he would have testified. Also, the cases that Mr. Boydman cited were all cases where are you abusing discretion by denying a motion to sever? If you look at it like a scale from one to 10, one to eight, you're not abusing discretion by refusing to sever, but four to 10 could be you're not abusing discretion by going the other way. You've got an area of basically four to eight, which is a gray area, could go either way. A court could make either decision and not abuse its discretion. You're separating the adequacy of the affidavit from how we measure abuse of discretion. It does seem to me fundamental in determining how discretion is exercised is whether sufficient usable evidence at this stage through an affidavit was presented to Judge Fallon. You accept the multitude of cases indicating this affidavit does not pass the usual muster. How does abuse of discretion wipe away that defect? Because again, the court's not standing in the position of is this right or not? It's a question of can this ruling stand? The district court, Judge Fallon saw Sensat testify. He believed him that he would testify that Mr. Fernandez did not engage in drug trafficking with him. I think you have to give credence to his credibility call. That has some weight. If you're saying he abused his discretion by believing that Mr. Sensat would so testify and that he would have severed the trials on that basis and tried Sensat first so that he wouldn't have to give up his right against self-incrimination. That's the best I could do. We would ask that you affirm it's an equitable matter. Thank you, Ms. Schillbarth. Okay, Mr. Boydman, back to you. Thank you, Your Honors. A couple of things. First, Judge Southwick, you asked about what authority was there to look at what the judge said about the order. We would just say there's no authority that says a judge's word is one thing or another. We would just ask you to do what you would do in reviewing any case. Just take that into consideration and take the record into consideration as well. The very same thing you would do as if the judge had said he had ruled on the matter and defense was appealing. So just review the matter as you would do any other case. As far as the claim that Ms. Schillbarth mentioned that, you know, Judge Fallon believes Sensat. This really isn't a question about Sensat's testimony or his credibility, because if you believe what Sensat said, then what he said was, I maintain my innocence. He said he's not going to say anything to be used against him. So if you find Sensat credible, that's part of it, and that actually shows the offer is conditional and falls into those cases that Ms. Schillbarth conceded show a problem with the affidavit, which ultimately would show severance would not be granted, which ultimately means counsel was not ineffective. Judge Davis, you asked about the Rule 4.2 issue and what more could the attorney have done. And while Ms. Schillbarth suggests that after Diaz spoke with Sensat's attorney, he should have spoken with Sensat directly anyway, I can only imagine that that would interfere in the attorney client relationship between Sensat and his attorney. And I can only imagine what it would be like if after Sensat's attorney has said, I'm going to advise him not to do it, the next time we talk together, this attorney just bypasses me and asks my client a direct question. I don't certainly think, as you suggested, Judge Davis, that trial counsel is not ineffective for following the dictates of Rule 4.2 and being professional in that matter. The absence of a lawyer, which Ms. Schillbarth talked about, and that certainly was the only reason Judge Fallon gave for finding Rule 60B6 was filed in a reasonable time, the absence of a lawyer is a problem because in the end, it's a right to a lawyer anyway. So what you would have in this situation, if this is allowed to stand, is pro se litigants would actually be treated differently in their filing status than would post-conviction attorneys who have lawyers. Because the lawyer would be held to a higher standard of having to file within a reasonable time, but the pro se litigant without the lawyer, his reasonable time would be much longer because he didn't realize the legitimate argument he could make. That's just not the case in post-conviction proceedings where you don't have the right counsel. Judge Davis, I think I asked Ms. Schillbarth, if he asked you, I hope I'm not repeating his question, did you find any case, what's the longest period of time in any case that you uncovered of acceptable delay under 60B6? I haven't found, I can't find one where I can say that was the longest acceptable. I have found three which times less than this were clearly not acceptable in this court, and that was Jasper, which was a death penalty case, and the motion was filed two to three years after final judgment, and this court said that was too late. Buck v. Thaler, which was also a death penalty case. These are all 60B cases? Yes, there were 60B cases on state habeas coming up, but in the Buck v. Thaler, another capital murder case, five years after a final judgment was deemed by this court to be untimely, and then in the civil case of Simmons v. Twin City Towing, the court stated nine years is not within a reasonable time under any understanding of that phrase. So all those times, much less than this, have been determined differently, and again, even assuming that there is a moving scale, the time starts from the time you have grounds, and those grounds, if they existed, existed when the order was written in 1998. This is really a case of what we argued highlights the potential of a Rule 60B-6 motion because of the expanding nature of this claim, and I think you touched on this, Judge Davis. In 1997, when the claim was you should have gotten an affidavit, the only evidence put forth was the Sensat affidavit that said I told him to move for a severance. That's 1997. That's the timely filed claim in evidence. In 2012, in 2013, we get two new affidavits, which now say I testify, and I testify to this, but only if it doesn't affect me. Well, now we get to appeal, and in this matter, now the 2255 counsel has a conflict. He performed ineffectively. Those were not argued before. That's not findings that Judge Fallon made, but it's a constant issue of how this If there was a problem, all Judge Fallon needed to do was go back to the record that was filed in 1997 and make that discussion, and finally, Ms. Schulberg talks about the issue being a conscience in sentencing. If sentence is the issue, Your Honor, the ends do not justify the means. This was a legitimately imposed sentence following a legitimately obtained conviction, and seeking ineffective assistance of counsel arguments 20 years after and vacating 20-year trials later is not the way to address a sentence. Unless there are any more questions, we'll rest in our brief. Thank you, Your Honor. Okay, thank you. Thank you, counsel. We have your case, and Ms. Schulberg, your court